RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0290p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

PENN, LLC, et al.,

*Plaintiffs,*

No. 14-3108

AMELIA A. BOWER; ALVAND A. MOKHTARI;
PLUNKETT & COONEY, P.C.,

*Attorneys-Appellees,*

*v.*

PROSPER BUSINESS DEVELOPMENT CORPORATION, et
al.,

*Defendants,*

JAMES E. ARNOLD & ASSOCIATES; JAMES E.
ARNOLD,

*Defendants-Appellants.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:10-cv-00993—Gregory L. Frost, District Judge.

Argued: October 9, 2014

Decided and Filed: December 12, 2014

Before: MOORE and COOK, Circuit Judges; STEEH, District Judge.[*]

---

## COUNSEL

**ARGUED:** James E. Arnold, JAMES E. ARNOLD & ASSOCIATES, LPA, Columbus, Ohio, for Appellants. Josephine A. DeLorenzo, PLUNKETT COONEY, P.C., Bloomfield Hills, Michigan, for Appellees. **ON BRIEF:** James E. Arnold, Damion M. Clifford, Gerhardt A.

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

Gosnell II, JAMES E. ARNOLD & ASSOCIATES, LPA, Columbus, Ohio, for Appellants. Josephine A. DeLorenzo, PLUNKETT COONEY, P.C., Bloomfield Hills, Michigan, for Appellees.

------------

**OPINION**

------------

COOK, Circuit Judge.   In this dispute over the management of a joint venture, Defendants-Appellants James E. Arnold & Associates and the firm's eponymous partner (together the "Arnold Firm") challenge the district court's denial of their motion for Rule 11 sanctions against plaintiffs' counsel, Attorneys-Appellees Amelia A. Bower, Alvand A. Mokhtari, and Plunkett & Cooney, P.C. (collectively "P&C").  Although the district court found the sanctions motion a "close call," it ultimately rejected the Arnold Firm's allegations that P&C filed the plaintiffs' complaint with an improper purpose and without a sufficient basis in law or fact.   We AFFIRM the district court's denial of sanctions on the alternative ground that the Arnold Firm's failure to comply with Rule 11's safe-harbor provision made sanctions unavailable.

I.

P&C filed a complaint in federal court on behalf of Plaintiff Penn, LLC against Defendant Prosper Business Development Corporation, Prosper's owners, and the Arnold Firm. The complaint alleged violations of the Racketeering Influenced and Corrupt Organizations Act, fraud, conversion, unjust enrichment, and breach of fiduciary duty in connection with the management of Penn and Prosper's joint venture, Plaintiff BIGresearch, LLC.[1]  The complaint represented the latest in a series of court and arbitral proceedings stretching back to 2004, but Penn never before named the Arnold Firm—Prosper and BIGresearch's counsel in the previous disputes—as a defendant.

------------

[1]Although Penn named BIGresearch as a plaintiff, the company on whose behalf an investor sues typically joins the derivative action as a nominal defendant.  *See Ross v. Bernhard*, 396 U.S. 531, 538–39 (1970).

On December 6, 2010, the Arnold Firm served P&C with a letter on behalf of both itself and its clients and co-defendants.  The letter purported to satisfy "the obligations of . . . Fed. R. Civ. P. 11" and threatened to seek sanctions "if the captioned matter [was] not dismissed before the first answer date of December 20, 2010."  (R. 37-1, Ex. A, Arnold Aff. Ex. 2, Arnold Firm Letter at 1.)  The Arnold Firm complained that "virtually the *entire* complaint [was] frivolous" and that "there [was] no reasonable basis in law or fact that [could] remotely support [it]."  (*Id.* at 2 (emphasis in original).)  The letter further alleged that P&C filed the complaint for the "improper and abusive purpose" of disrupting the Arnold Firm's attorney-client relationship with Prosper and its owners.  The firm also retained the right to seek sanctions on additional legal grounds, stating in a footnote that the letter was "by no means intended to be an exhaustive recitation of the Rule 11 . . . violations; it [was] merely illustrative."  (*Id.* at 2 n.3.)

Rather than withdraw the complaint, P&C responded with its own letter rejecting the Arnold Firm's allegations of impropriety.

On December 23, 2010, the Arnold Firm moved to dismiss all five causes of action against it.  And six months later, on May 27, 2011, the district court granted the motion and dismissed the Arnold Firm from the action.

On June 8, 2011, the Arnold Firm, this time through its trial counsel, served P&C with a proposed motion for Rule 11 sanctions.  In an accompanying letter, the firm's counsel threatened to file the sanctions motion with the district court in twenty-one days unless P&C reimbursed the Arnold Firm for the $36,788.14 incurred in obtaining dismissal of the complaint.  P&C refused, and the Arnold Firm filed its Rule 11 motion on June 30, 2011.

P&C opposed the motion not only on the merits but also on the procedural ground that serving a copy of the motion post-dismissal failed to comply with Rule 11's safe-harbor provision which states:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2).

The Arnold Firm countered that its December 6, 2010 letter satisfied the rule because it put P&C on notice that its refusal to withdraw the complaint would result in a motion for sanctions.

The district court bypassed the procedural issue, calling the question of whether a warning letter satisfies Rule 11's safe-harbor provision "somewhat unsettled." (R. 72, Rule 11 Order at 5–6.) The court then denied the firm's motion on the merits, finding P&C's allegations against the Arnold Firm "particularly deficient, [but] not so deficient as to necessitate sanctions for their filing." (*Id.* at 5.)

In January 2014, the district court entered final judgment in the underlying action between Penn and Prosper. The Arnold Firm timely appealed, challenging the court's denial of sanctions.

II.

Although the district court denied the Arnold Firm's Rule 11 motion on the merits, P&C argues that the motion's procedural shortcomings should decide the appeal, given that "we are free to affirm the judgment on any basis supported by the record." *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002).

Three factors persuade us to affirm on the alternative ground that the Arnold Firm failed to comply with Rule 11's safe-harbor provision. First, the question "involves only application of legal propositions to the undisputed facts in the record," and the parties fully briefed and argued the procedural issue in the district court and on appeal. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002); *see also Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011). Second, the procedural issue precedes an inquiry on the merits. *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997) ("[T]he rule is unquestionably explicit . . . that unless a movant has complied with the twenty-one day 'safe harbor' service, the motion for sanctions 'shall not be filed with or presented to the court.'" (quoting former Fed. R. Civ. P. 11(c)(1)(A))). Finally, uncertainty over whether a warning letter satisfies Rule 11's safe-harbor provision persists in this circuit. *See, e.g., First Bank of Marietta*

*v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 527–28 (6th Cir. 2002) (discussing this court's apparently conflicting decisions); *Tillman v. Apostolopoulos*, No. 10-12253, 2010 WL 5088763, at *2 & n.1 (E.D. Mich. Dec. 8, 2010) (noting the lack of controlling authority).  We take this opportunity to clarify the law.

III.

Rule 11 imposes on attorneys a duty to reasonably investigate factual allegations and legal contentions before presenting them to the court.  Fed. R. Civ. P. 11(b).  The threat of sanctions encourages keen observance of this duty.  *See Ridder*, 109 F.3d at 294 ("Rule 11's ultimate goal [is] deterrence, rather than compensation . . . .").  But, the drafters of Rule 11 also included the safe-harbor provision to allow the nonmovant a reasonable period to reconsider the legal and factual basis for his contentions and, if necessary, to withdraw the offending document.  *See* Fed. R. Civ. P. 11(c) Advisory Committee Notes (1993 Amendments).  For similar reasons, the party seeking sanctions must effectuate service at least twenty-one days "prior to the entry of final judgment or judicial rejection of the offending contention."  *Ridder*, 109 F.3d at 297.  Failure to comply with the safe-harbor provision precludes imposing sanctions on the party's motion.  *Id.*

Here, the Arnold Firm served P&C with a copy of its Rule 11 motion on June 8, 2011, twelve days *after* the district court dismissed Penn's claims against the firm.  P&C contends that this late service deprived it of the safe-harbor period's protection and, therefore, foreclosed the firm's sanctions motion.  Unable to rely on the June 8 letter under *Ridder*, the Arnold Firm argues that its December 6, 2010 letter satisfied Rule 11's safe-harbor provision because it notified P&C of the firm's intent to pursue sanctions approximately six months before the court dismissed Penn's complaint and eight before the Arnold Firm moved for sanctions.  But "[i]t would . . . wrench both the language and purpose of . . . the Rule to permit an informal warning to substitute for service of a motion."  *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998).

First and most important, the rule specifically requires formal service of a motion.  The safe-harbor provision states that "[t]he *motion* must be served under Rule 5" at least twenty-one days before filing it with the court.  Fed. R. Civ. P. 11(c)(2) (emphasis added).  We have no doubt that the word "motion" definitionally excludes warning letters, and our reading of the

rule's plain language finds support in the Advisory Committee's Notes. In its gloss on the 1993 amendments, the Committee refers to letters as "informal notice" and recommends that attorneys send a warning letter as a professional courtesy "before proceeding to prepare and serve a Rule 11 motion." Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments). "In other words, the Advisory Committee's Notes clearly suggest that warning letters . . . are supplemental to, and cannot be deemed an adequate substitute for, the service of the motion itself." *Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006); *accord In re Pratt*, 524 F.3d 580, 588 (5th Cir. 2008) ("We may not disregard the plain language of the [rule] and our prior precedent without evidence of congressional intent to allow 'substantial compliance' through informal service."); *Barber*, 146 F.3d at 710 ("That requirement, too, was deliberately imposed, with a recognition of the likelihood of other warnings.").

Furthermore, important policy considerations counsel against the Arnold Firm's more permissive reading. We previously commented that "[t]he inclusion of a 'safe harbor' provision is expected to reduce Rule 11's volume, formalize appropriate due process considerations of sanctions litigation, and diminish the rule's chilling effect." *Ridder*, 109 F.3d at 294. Similarly, the Advisory Committee reasons that "the 'safe harbor' period begins to run only upon service of the motion" in order "[t]o stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule." Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments).

Permitting litigants to substitute warning letters, or other types of informal notice, for a motion timely served pursuant to Rule 5 undermines these goals. Whereas a properly served motion unambiguously alerts the recipient that he must withdraw his contention within twenty-one days or defend it against the arguments raised in that motion, a letter prompts the recipient to guess at his opponent's seriousness. *See Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001). Thus, not only Rule 11's text, but also "[p]ragmatic realities require such strict adherence to the rule's outlined procedure." *Ridder*, 109 F.3d at 297.

This case bears out these concerns. Although the Arnold Firm argues that its December 6, 2010 warning letter satisfied Rule 11, the letter expressly reserved the firm's right to assert additional grounds for sanctions in its actual motion. Tellingly, trial counsel implicitly

recognized the formality and seriousness required by Rule 11 when it attached the proposed sanctions motion to its June 8, 2011 warning letter.

The majority of our sister circuits to address this issue adopt the same position. *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175–76 (2d Cir. 2012) ("An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period."); *Pratt*, 524 F.3d at 586–88 (holding that Rule 9011 of the Federal Rules of Bankruptcy Procedure requires formal service of a proposed sanctions motion based on Fifth Circuit precedent analyzing Rule 11); *Roth*, 466 F.3d at 1192–93 ("[N]othing in subsection (c)(1)[] suggests that a letter addressed to the alleged offending party will suffice to satisfy the safe harbor requirements."); *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1030 (8th Cir. 2003) (reversing a sanctions award, in part, because "Unifund did not serve a prepared motion on Appellant prior to making any request to the court"); *Barber*, 146 F.3d at 710 ("Those warnings were not motions, however, and the Rule requires service of a motion."); *cf. In re Miller*, 730 F.3d 198, 204 n.5 (3d Cir. 2013) (questioning an earlier, unpublished decision that upheld informal notice by warning letter); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 396 (4th Cir. 2004) ("[W]e conclude that the safe-harbor provisions of Rule 11 are inflexible claim-processing rules . . . ."). Only the Seventh Circuit has espoused the opposite stance in a published opinion. *See Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 808 (7th Cir. 2003). But its decision declines to address any of the textual or policy concerns outlined above, and other circuits roundly criticize the decision's cursory reasoning. *See Pratt*, 524 F.3d at 587–88; *Roth*, 466 F.3d at 1193.

Finally, invoking *stare decisis*, the Arnold Firm contends that three of this court's unpublished decisions establish that a warning letter satisfies Rule 11's safe-harbor provision. *See Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509, 528 (6th Cir. 2013) (upholding a sanctions award where the defendant sent a "safe-harbor letter," and the plaintiff never challenged its procedural compliance with Rule 11); *Barker v. Bank One, Lexington, N.A.*, No. 97-5787, 1998 WL 466437, at *2 (6th Cir. July 30, 1998) (order) (holding that the movant substantially complied with Rule 11's safe-harbor provision by sending a warning letter); *Hadden v. Letzgus*, No. 96-2250, 1997 WL 434413, at *1 (6th Cir. July 31, 1997) (order) (holding harmless the

defendant's failure to serve an opponent with informal notice or a motion because the plaintiffs had "ample opportunity to dismiss [the] meritless cause of action voluntarily"). But these unpublished decisions neither bind us nor persuade us to forsake the benefit to bench and bar afforded by requiring strict compliance with Rule 11's clear text.

## IV.

We AFFIRM the district court's denial of sanctions given the Arnold Firm's failure to observe the mandatory procedures of Rule 11.